## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| THE CBE GROUP, INC. and<br>RGS FINANCIAL, INC., on behalf of<br>themselves and all others similarly situated<br><br>  *Plaintiffs,*<br><br>v.<br><br><br>JOHN C HEATH PLLC D/B/A<br>LEXINGTON LAW  FIRM AND<br>PROGREXION ASG, INC.<br>  *Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.:  3:17-cv-02594-L |

### DEFENDANTS' RENEWED MOTION
### FOR JUDGMENT AS A MATTER OF LAW

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A**.

**FRANK ALVAREZ**
State Bar No. 00796122
**BRENT W. MARTINELLI**
State Bar No. 24037037
**JOSHUA ROVELLI**
State Bar No. 24110301

1700 Pacific, Suite 4545
Dallas, Texas 75201
Telephone:  (214)754-8755
Facsimile:  (214)754-8744
Email: brent.martinelli@qpwblaw.com
Email: frank.alvarez@qpwblaw.com
Email: josh.rovelli@qpwblaw.com

*Attorneys for John C. Heath, Attorney at Law,*
*PLLC d/b/a Lexington Law Firm and Progrexion, ASG,*
*Inc.*

## <u>TABLE OF CONTENTS</u>

1. **Judgment as a Matter of Law Standard** ...................................................... 1-2

2. **Argument** ............................................................................................. 20-22

    2.1    Plaintiffs' Fraud Claim Must Fail ...................................................... 2-13

        2.1.1   *Plaintiffs' Failed Attempt to Demonstrate a Material False Statement which Defendants Knew to Be False* ............................................................. 2-11

        2.1.2   *Plaintiffs Did Not Reasonably Rely on Defendants' Alleged Misrepresentation* ................................................ 11-13

    2.2    Plaintiffs' Fraud By Non-Disclosure Claim Must Fail ................................... 14-15

    2.3    Plaintiffs' Claims are Barred by the Statute of Limitations, the Jury's Findings that the Fraud Should Have Been Discovered on August 3, 2018 or October 1, 2018 Was Clearly Incorrect ........................................................... 15-17

    2-4    Plaintiffs Should Not Have Presented their Damages to the Jury Because They Failed to Substantiate and Mitigate Them ........................................................................ 17-19

    2-5    Plaintiffs Should Not Have Argued Punitive Damages to the Jury and the Jury's Punitive Damages Award was Excessive Under the Applicable Law ................................... 19

        2.5.1   *Plaintiffs Failed to Submit Sufficient Factual Evidence to Support Their Request for Punitive Damages* ............................................................... 19-20

        2.5.2   *The Jury's Grant of Punitive Damages Exceeds The Damages Permitted by Tex. Civ. Prac. & Rem. Code Ann. § 41.008* ........................................................ 20-21

3. **Conclusion** .......................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*1st Coppell Bank v. Smith*,
  742 S.W.2d 454 (Tex. App.—Dallas 1987, no writ) ..................................................4, 5, 6, 10

*Arroyo Shrimp Farm, Inc. v. Hung Shrimp Farm, Inc.*,
  927 S.W.2d 146 (Tex. App. – Corpus Christi – 1996, no writ) .........................................11, 13

*Attorney Grievance Commission of Maryland v. Paul*,
  187 A.3d 625, 459 Md. 526 (2018) ..................................................................................6, 7

*Baker v. City of Robinson*,
  305 S.W.3d 783 (Tex. App. – Waco 2009, pet. denied) .........................................................3

*In re Barber*,
  982 S.W.2d 364 (Tex. 1998) ..................................................................................4, 6, 10

*Bazan v. Munoz*,
  444 S.W.3d 110 (Tex. App. – San Antonio 2014, no pet.) ...................................................13

*Custom Leasing, Inc. v. Texas Bank & Trust Co.*,
  516 S.W.2d 138 (Tex. 1974) ...................................................................................................3

*Exxon Corp. v. Emerald Oil & Gas Co.*,
  348 S.W.3d 194 (Tex. 2011) .................................................................................................15

*EZ Pawn Corp. v. Mancias*,
  934 S.W.2d 87 (Tex. 1996) .....................................................................................................8

*Ginn v. NCI Bldg. Sys.*
  472 S.W.3d 802 (Tex. App. – Houston [1st Dist.] 2015 – no pet.) .......................................11

*Guevara v. Lackner*,
  447 S.W.3d 566 (Tex. App. – Corpus Christi 2014, no pet.) ................................................14

*Hunter v. Knoll Rig & Equip. Mfg. Co.*,
  70 F.3d 803 (5th Cir. 1995) .....................................................................................................2

*In re: International Profit Assocs.*,
  274 S.W.3d 672 (Tex. 2009)..................................................................................................14

*JPMorgan Chase Bank v. Orca Assets G.P.*,
  LLC, 546 S.W.3d 648 (Tex. 2018) .......................................................................................11

*Landers v. Aurora Loan Servs.*
  434 S.W.3d 291 (Tex. App – Texarkana – 2014, no pet.) ......................................................3

*In re McKinney*,
   167 S.W.3d 833 (Tex. 2005)............................................................................8

*Pierce v. Dekle*,
   61 Fla. 390, 54 So. 389 (1911)......................................................................5

*Powers v. Bayliner Mar. Corp.*
   83 F.3d 789 (6th Cir. 1996) ..........................................................................1

*Sawyer v. E.I. Du Pont de Nemours & Co.*,
   430 S.W.3d 396 (Tex. 2014).........................................................................11

*Schlumberger Tech v. Pasko*,
   544 S.W.3d 830 (Tex. 2018).........................................................................15

*Signal Peak Enterprises of Texas, Inc. v. Bettina Investments, Inc.*,
   138 S.W.3d 915 (Tex. App.—Dallas 2004, pet. struck)..............................21

*Singer v. Dungan*,
   45 F.3d 823 (4th Cir. 1995) ..........................................................................1

*Southwestern Bell Tel. Co. v. Garza*,
   164 S.W.3d 607 (Tex. 2004).........................................................................19

*State v. Hickman*,
   Fla. App. 1966, 189 So. 2d 254 ...................................................................6

*Stork v. State*,
   114 Tex. Crim. 398, 23 S.W.2d 733 (Tex. Crim. App. 1929) .....................4

*Tony Gullo Motors I, L.P. v. Chapa*,
   212 S.W.3d 299 (Tex. 2006).........................................................................18

*United Bonding Ins. Co. v. Banco Suizo-Panameno, S.A.*,
   422 F.2d 1142 (5th Cir. 1970) ..................................................................5, 6

*Weisgram v. Marley Co.*
   528 U.S. 440 (2000).......................................................................................1

**Statutes**

FCRA ....................................................................................................17, 18

FDCPA..........................................................................................................18

Fed. R. Civ. P. 50(b) .....................................................................................1

*Tex. Civ. Prac. & Rem. Code Ann. § 41.008* ...............................19, 20, 21

Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b)..........................................20

Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) ...............................................................15

Tex. Civ. Prac. & Rem. Code § 41.003(a) ....................................................................18

subsection 41.008(b) of the Texas Civil Practice and Remedies Code .........................19

**Other Authorities**

80 C.J.S. Signatures § 14 ...............................................................................................3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE CBE GROUP, INC. and | § | |
| RGS FINANCIAL, INC., on behalf of | § | |
| themselves and all others similarly situated | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | Civil Action No.:  3:17-cv-02594-L |
| **v.** | § | |
| | § | |
| | § | |
| JOHN C HEATH PLLC D/B/A | § | |
| LEXINGTON LAW  FIRM AND | § | |
| PROGREXION ASG, INC. | § | |
| *Defendant.* | § | |

## DEFENDANTS' RENEWED MOTION
## FOR JUDGMENT AS A MATTER OF LAW

**COME NOW,** John C. Heath Attorney at Law, PLLC d/b/a Lexington Law Firm**,** ("Lexington Law Firm" or "Lexington"), and Progrexion ASG, Inc. ("Progrexion") (collectively "Defendants") in the above-entitled matter, and file this Renewed Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b). In support of the Motion, Defendants state as follows:

1. **Judgment as a Matter of Law Standard**

A Motion for Judgment as a Matter of Law (formerly known as a Motion for Directed Verdict) allows the court to remove cases or issues from the jury's consideration when the facts make it sufficiently clear that the law requires a particular result. *Weisgram v. Marley Co.* 528 U.S. 440, 447-48 (2000). Generally, a Judgment as Matter of Law can be entered when there is a complete absence of pleading or proof on an issue material to the claim or defense, or when there are no controverted issues of fact on which reasonable persons could differ. *Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995); *Powers v. Bayliner Mar. Corp.* 83 F.3d 789 (6th Cir. 1996). A mere

scintilla of evidence is not sufficient to present a question for the jury. *Hunter v. Knoll Rig & Equip. Mfg. Co.*, 70 F.3d 803, 808 (5th Cir. 1995).

2. **Argument**

To meet their burden of proof, each Plaintiff was required to meet each element of each remaining cause of action as to each Defendant. Plaintiffs failed to meet that burden, despite the jury finding to the contrary. Judgment as a Matter of Law should be entered here because there is a "complete absence of pleading or proof" on several vital elements of Plaintiffs' remaining claims. Plaintiffs have not supported their fraud claim with a demonstration of any material misrepresentation. Even if the Court finds they have, Plaintiffs have failed to show reasonable reliance on their part. Furthermore, Plaintiffs' fraud by non-disclosure claim must fail, and should not have been included on the jury charge because Plaintiffs failed to show Defendants had any duty to disclose facts to them, which is an element of the claim that should have been disposed of by the Court before the jury was charged. Further, Defendants' affirmative defenses of statute of limitations and mitigation should have precluded Plaintiffs' ability to recover in this case, and the jury's finding regarding the date of the fraud should be set aside because it is clearly incorrect and contradicted by evidence on the record. Plaintiffs also failed to establish entitlement to exemplary damages by clear and convincing evidence, and the damages by the jury exceeded the amount permitted under Texas law. Each argument is further detailed below.

2.1  Plaintiffs' Fraud Claim Must Fail

In order to support a claim for fraud, Plaintiffs were required to demonstrate: a) Defendants made a material, false representation to Plaintiffs; b) Defendants knew the representation to be false; c) Defendants made the representation with the intent that Plaintiffs act on it; d) Plaintiffs reasonably relied on the representation; and e) the representation caused Plaintiffs injury. Based on the evidence set forth at trial, there was a complete absence of proof

as to elements a), b), and d), and therefore Defendants are entitled to Judgment as a Matter of Law.

### 2.1.1 *Plaintiffs Failed to Demonstrate a Material False Statement which Defendants Knew To Be False.*

To prove an action for common-law fraud, Plaintiffs' burden was to establish the Defendants were responsible for a false representation. *Baker v. City of Robinson*, 305 S.W.3d 783, 788 (Tex. App. – Waco 2009, pet. denied). A false representation consists of words or other conduct to suggest to Plaintiffs that a fact is true when it is not. *See Custom Leasing, Inc. v. Texas Bank & Trust Co*., 516 S.W.2d 138, 142 (Tex. 1974). Plaintiffs must also demonstrate Defendants made a misrepresentation "knowingly," meaning the Defendants were aware of the statement's falsity or understood the statement made was false. *Landers v. Aurora Loan Servs.* 434 S.W.3d 291, 293-294 (Tex. App – Texarkana – 2014, no pet.).

While it is true there is very little case law on the issue of whether an attorney commits a "misrepresentation" when signing a document on behalf of his client and in the client's name after obtaining permission to do so, it is far from unsettled that an individual may sign a legal instrument for another at his direction or request. Hornbook law provides that generally, "a signature may be made for a person by the hand of another acting in the presence of such person, at his direction, or request, or with his acquiescence, unless a statute provides otherwise. A signature of this type becomes the signature of the person for whom it is made, and has the same validity as though written by him." 80 C.J.S. Signatures § 14 (citations omitted). "Where a signature is made in this manner, the person writing the name is regarded as a mere instrumentality, by which the person whose signature is written exercises his own discretion and acts for himself, and not through an agent." *Id.*

Applying these concepts, there is ample case law providing that an individual is permitted to sign a legal instrument in the name of another after obtaining permission to do so. For

example, the Texas Supreme Court held that a Judge's case coordinator is permitted to rubber stamp the judge's signature on orders when authorized to do so by the judge. *In re Barber*, 982 S.W.2d 364 (Tex. 1998). There is no requirement the case coordinator disclose to the litigants the Judge did not physically put pen to paper, and instead the case coordinator may simply affix the judge's signature to the document after obtaining authority to do so. In *Barber*, the Honorable Homer Salinas granted his trial court coordinator authority to rubber stamp his signature to an agreed order. The record was unclear whether the authority was granted over the telephone or in person, but was clear that authority was granted and Judge Salinas was not present for the signing of the order. When the validity of the order was challenged, the Texas Supreme Court held "[a] signature may legally be made not only by the signer personally, but by and through someone duly authorized by the signer." *Id.* at 366; citing *Stork v. State*, 114 Tex. Crim. 398, 23 S.W.2d 733 (Tex. Crim. App. 1929). In other words, because the individual who placed the signature on the legal instrument was duly authorized to do so, the document was valid and enforceable. Because of the authorization, the judge's signature was not a forgery or fraud, and was clearly not a "misrepresentation" because his agent acted on his behalf and at his request.

Utilizing the same common sense rationale, Texas Court of Appeals evaluated whether an individual who signed a deed of trust in the name of his parents after obtaining their consent to do so committed forgery. *1st Coppell Bank v. Smith*, 742 S.W.2d 454, 460 (Tex. App.—Dallas 1987, no writ) (overturned on other grounds). In that case, the evidence showed that Katherine Gorman handled real estate investments for herself and her husband. She agreed to assist her son in his business by allowing him to purchase houses in their names. The evidence also showed that she permitted her son to sign their names to some documents, and that she gave her son "loose permission" to sign their names to many papers. Utilizing that authority, Ms. Gorman's

son executed a deed of trust in her and her husband's name. The deed was later challenged by 1st Coppell Bank, which alleged the signature was a forgery. The Texas Court of Appeals concluded that because Ms. Gorman's son was authorized to sign his parents' names, the signature was not a forgery. *Id.* ("It seems clear, then, that if a person signs the name of another with authority to do so, the signature is not a forgery.")

Other states in the Fifth Circuit have reached similar conclusions under the similar circumstances. In *United Bonding Ins. Co. v. Banco Suizo-Panameno, S.A.*, the Fifth Circuit analyzed the legal significance of one person signing a legal instrument in the name of, and on behalf of another. 422 F.2d 1142, 1144 (5th Cir. 1970). In this case, United Bonding ("United") gave authorization and a general power of attorney authorizing Allied Underwriters ("Allied"), and its principal, Virgil P. Lynch ("Lynch") to issue bonds on its behalf. In 1965, Allied executed four bonds for $25,000 each which later became the subject of litigation. The bonds appeared to be executed by Lynch. However, the evidence illustrated that the bonds were actually signed by Lynch's employee, Charles Goswick ("Goswick") in Lynch's name, and that Lynch routinely authorized Goswick to sign certain documents on his behalf. Lynch testified it was his custom at Allied to allow Goswick to sign his name to insurance undertakings and that the practice was customary in the insurance industry. *Id.* at 1145.

The Fifth Circuit analyzed whether Allied appropriately acted as an agent of United when Goswick signed in Lynch's name and at his direction. Utilizing Florida Law, the Court held that "an act done by a person in the presence of another and by the other's direction or with his consent, even the signing or execution of a sealed or written instrument, is not deemed the act of an agent, but is the direct act of a person by whose direction it is done." *Id.* at 1147, citing *Pierce v. Dekle*, 61 Fla. 390, 54 So. 389 (1911) ("The rule is well settled both in England and in the United States that an act done by a person in the presence of another, and by his direction or with

his consent, as the signing or execution of a sealed or written instrument, for example, is not regarded as the act of an agent, but is the direct act of the person by whose direction it is done."). The Court also likened this case to *State v. Hickman*, Fla. App. 1966, 189 So. 2d 254, wherein an arrest warrant was challenged because it was not signed by the Justice of the Peace, but stamped with a rubber facsimile of his signature by his secretary. The signature was held legally made not only by the signer himself, but by and through someone duly authorized by him if done in his presence. *Id.*[1]

Ultimately, the Fifth Circuit concluded the district court was correct to conclude that Allied acted as the agent of United when Goswick signed Lynch's name. "Lynch authorized and directed Goswick to sign his name to the bonds here in question and . . . Goswick did so in Lynch's presence, either actual or constructive, so that the signing constituted a direct act of Lynch. This being the case . . . Goswick's signing of Lynch's name was the same as Lynch signing the bonds himself." *United Bonding Ins. Co.* at 1148. In short, there was no "fraud" or "misrepresentation" involved, Goswick properly acted as Lynch's agent and at his instruction. The legal significance is that the signature was a direct act of Lynch. This is consistent with the holdings in *Barber* and *Smith*, above.

In addition to the case law providing that an individual is permitted to sign in the name of another when authorized to do so, the Maryland Court of Appeals analyzed whether an attorney representing a client shares the same privilege in *Attorney Grievance Commission of Maryland v. Paul*, 187 A.3d 625, 459 Md. 526 (2018). In *Paul*, an attorney signed his client's name on a non-disclosure agreement after retaining the authorization of the client to sign his name on documents relating to the representation. *Id.* at 632. The attorney did not disclose to the other contracting party that he had signed for the client, and instead signed only in the client's name. *Id.* A

---

[1] The term "presence" was also broadened to mean an act done in the judgment of another, rather than the physical presence. *Id.* "Presence" was interpreted to have the same broad meaning in *Barber,* supra.

disciplinary proceeding was initiated against the attorney wherein Bar Counsel argued the attorney "made a knowing representation that a non-disclosure agreement being sent to the opposing parties' counsel was signed by [the client] when he knew that his client had not signed the agreement." *Id.* at 635 (internal quotations omitted). In response, the attorney noted Bar Counsel "cannot cite any case from any jurisdiction that requires the disclosure that a person has signed someone's name with permission, or that a person has signed with a power of attorney, before or at the time of signing." *Id.* Ultimately, the court held that it <u>could not</u> "conclude that [the attorney] signing [the client's] name or his 'omission' to indicate that he was signing [the client's] name 'as attorney-in-fact or any other capacity on behalf of Burke' was a 'false or misleading assertion.'" The Court's analysis continued:

> Before the signing of the non-disclosure agreement, [attorney] and [client] discussed the relevant agreement, and [client] gave [attorney] his permission to sign his name on the agreement because Burke was away on vacation. <u>Since [attorney] had the legal right to sign [client's] name on the non-disclosure agreement, [attorney's] statement that the agreement "was signed by [client] and myself" cannot be construed as "false" or "misleading"</u> even though [client] did not physically sign the agreement.

*Id.* at 636 (emphasis added).

The facts before the Court are nearly identical to those outlined above. Defendants failed to show at trial that Lexington Law Firm or Progrexion made any material false statement which they knew to be false because in the case of each alleged "misrepresentation" Lexington had consent of the client to act in the prescribed manner. Progrexion did not send out or sign any letters on behalf of Lexington clients. Plaintiffs argue Defendants misrepresented the identity of the sender when letters were sent to Plaintiffs on behalf of, and in the name of Lexington Law Firm clients. Simply put, an attorney (or any person, for that matter) is permitted to sign on behalf of another after obtaining authorization and consent to do so. When they act in the authorized manner, the resulting statement is not a misrepresentation. In this case, Defendants

were hired by clients to act on their behalf, as evidenced by Exhibit 9, which is a retainer agreement executed by Lance Garza, a Lexington Law Firm client. The retainer agreement reads as follows:[2]

> You understand Communications sent by Lexington to Furnishers and Bureaus on your behalf will be sent in your name, and will not be identified as being sent by Lexington. Copies of written Communications will be provided to you upon request.

Later in the same exhibit, Lexington is again authorized to act "on your behalf and in your name":[3]

> You agree that Lexington may act as your non-exclusive agent and attorney in fact, on your behalf, for the limited purposes of:
>
> (a) requesting and receiving your consumer credit disclosures and credit reports;
> (b) disputing, challenging, or investigating with Bureaus as applicable, at your direction and within our professional judgment, inaccurate, unfairly reported, incomplete, or unsubstantiated information on such disclosures and reports;
> (c) receiving results from such inquiries and communicating them to you;
> (d) investigating and/or verifying information provided by Furnishers to Bureaus; and
> (e) signing letters on your behalf and in your name.

Cody Johnson, corporate representative for Lexington Law Firm, testified that each and every consumer client who retains Lexington Law Firm executes a retainer agreement with substantially identical terms, including those outlined above.[4] In other words, each and every client of Lexington Law Firm authorized the firm to send correspondence in their name and on their behalf. The clients also agreed that Lexington Law Firm may send letters which "will not

---

[2] *See* Exhibit 9, Lex 0127.
[3] *See* Exhibit 9, Lex 0130.
[4] While Plaintiffs indirectly argued the agency agreement was not valid, Texas law is clear that a party is bound by the terms of the contract the party signed, regardless of whether the party read it or though it had different terms. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (*citing EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996)). The evidence at trial was that all Lexington Law Firm clients agreed to the terms of the retainer agreements which contained the designations of agency outlined above. Therefore the designations of agency are valid.

be identified as being sent by Lexington." Further, Lexington's clients grant a limited designation of agency which permits the firm to sign "letters on your behalf and in your name." This fact was bolstered by Plaintiff's Exhibit 13, which was the audio recording of Lance Garza. Therein, Mr. Garza consented no fewer than three times for Lexington to send correspondence on his behalf and in his name.[5] The testimony also established the consumers review all negative trade lines on their credit report and identify the trade lines they wish to dispute. Likewise, Agustina Chavarria's testimony established that Lexington Law Firm had a contract online, which she filled out and "agreed to the terms and conditions and everything."[6] She also testified she signed the engagement letter and possibly just didn't recall consenting to Lexington sending letters in her name.[7] In effect, Plaintiff's evidence demonstrated the consumer directs the firm to send correspondence in their name and on their behalf to particular data furnishers who report inaccurate information about the consumer's credit. The fact the firm follows through with the request does not equate to a misrepresentation of any kind.

In the same vein, Plaintiffs failed to demonstrate that any letters were sent without the permission and consent of Lexington Law Firm's consumer clients. Each and every client has a similar retainer agreement containing agency language permitting the firm to act on their behalf and to send letters in their name. Hence, not only does Plaintiff's fraud claim fail as a matter of law, but there was also insufficient evidence for Plaintiff to establish a misrepresentation.

There is nothing false or fraudulent about a law firm acting on behalf of its client. The facts have shown Lexington Law Firm disputes negative trade lines on a client's behalf once the

---

[5] *See* Exhibit 13 at 37:17 ("That's the engagement agreement between yourself and us to do the work in your name and on your behalf."); 32:23 ("Lexington Law Firm will send written or electronic communications on your behalf and in your name to creditors and credit bureaus to address items on your credit report or credit history."); and 43:02 ("again, we do that work in your name and in your behalf.")

[6] *See* Deposition of Agustina Chavarria at 9:22-10:14, 46:7-25.

[7] *Id.*

trade lines are identified and the client instructs the firm as to which to dispute and why. The client also consents to the firm doing so. This is no different from the *Barber* or *Smith* matters above, wherein a principal granted authority for an agent to sign on their behalf. When the agent did sign on their behalf, the resulting signature was neither a forgery nor fraud, but the act of a principal by and through an authorized agent. Because Lexington Law Firm was authorized to send correspondence in the name of its clients by way of the designation of agency, then instructed to send correspondence by the consumer, there was no misrepresentation made to the Plaintiffs. Much like Goswick's signature for Lynch in *United Bonding Ins. Co.*, above, was the same as Lynch signing the bonds himself, Lexington's signatures for their clients are the same as the clients signing the documents themselves. Any statement allegedly made by Lexington Law Firm was, in fact, true because they were given permission to act in the manner stated and affirmatively told to do so by their clients and told what to include in the actual statement which was the letter. Plaintiffs failed to demonstrate Lexington Law Firm made any misrepresentation whatsoever. In fact, the letters in evidence reflect Lexington corresponded with Plaintiffs as their clients directed. Because Lexington had a legal right to sign its client's name on the correspondence, it cannot be said the statements made to Plaintiffs were "false" or "misleading" and Defendants are entitled to judgment as a matter of law.

Furthermore, Plaintiffs have not demonstrated Progrexion made any statement to them – much less a material misrepresentation. During Plaintiffs' examination of Randy Padawer, Mr. Padawer testified that Progrexion drafts no letters, sends no letters, signs no letters, and makes no decisions about what letters should be sent to whom. Plaintiff's entire fraud claim is based upon the "misrepresentation" of the correspondence stating it came from the consumer when it, in fact, came from Lexington. But there is zero evidence any such letter was sent by Progrexion. The last time Progrexion provided template letters to Lexington Law Firm to use was 2016, and even then

Progrexion merely provided templates for use by Lexington Law Firm and it was left to Lexington to select, revise, reject and/or send the letters. Progrexion's role ended with administrative support and fact gathering during the client intake process. Mr. Padawer's testimony revealed Progrexion has no authority to act on behalf of a consumer from that point forward and had no access to client information. Progrexion simply was not responsible for any statement to the Plaintiffs, and therefore Plaintiffs have failed to meet their burden of proving a material misrepresentation.

### 2.1.2 *Plaintiffs Did Not Reasonably Rely on Defendants' Alleged Misrepresentation.*

Assuming, *arguendo*, Plaintiffs demonstrated *both* Lexington Law Firm and Progrexion made a material misrepresentation, Plaintiffs still failed to demonstrate reasonable reliance on the alleged misrepresentation. Plaintiffs were required to establish justifiable reliance on the alleged misrepresentation. *Sawyer v. E.I. Du Pont de Nemours & Co.*, 430 S.W.3d 396, 401 (Tex. 2014). If Plaintiffs learned Defendants' alleged misrepresentation was false before acting on it, then Plaintiffs were neither deceived nor defrauded by the representation. *Ginn v. NCI Bldg. Sys.* 472 S.W.3d 802, 828-829 (Tex. App. – Houston [1st Dist.] 2015 – no pet.). Plaintiff has a duty to use ordinary care and reasonable diligence to protect its interests if it knows of red flags that would lead a reasonably prudent person to investigate. *JPMorgan Chase Bank v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653 (Tex. 2018). If the Plaintiffs undertook an investigation and discovered the alleged fraud, the Plaintiffs cannot claim to have justifiably relied on the misrepresentation. *Arroyo Shrimp Farm, Inc. v. Hung Shrimp Farm, Inc.*, 927 S.W.2d 146, 153 (Tex. App. – Corpus Christi – 1996, no writ).

Utilizing the proof at trial, no reasonable juror could have concluded the Plaintiffs reasonably relied upon the alleged misrepresentation. Plaintiffs claim the "misrepresentation" was placing the name of the consumer on the letters instead of the name of the firm. The facts

established no statute or rule preventing Lexington Law Firm from assisting a consumer, through the use of a designation of agency, to request information from credit agencies or data furnishers, such as the Defendants. In fact, the testimony revealed Sarah Buck, corporate representative for The CBE Group, first suspected the company was receiving "form" correspondence not actually drafted by the consumer in 2010. She also testified she saw an unusual uptick in such correspondence beginning in January, 2015. Likewise, Erin Harness, representative for RGS Financial, stated she had the same realization in 2012, with the letters increasing in volume in April, 2014. Neither witness analyzed or investigated whether the letters came from Lexington Law or Progrexion. Neither witness attempted to determine whether consumer clients of Lexington Law agreed to have correspondence sent out in the name and on their behalf. Both witnesses testified they were only required to respond to letters when they were sent by the consumer, and they were not required to respond when the letters come from an attorney or credit repair organization. Both witnesses interpreted unusual verbiage and similar mailing characteristics to mean the letters were not actually being sent by the consumer, but neither did anything about it. Likewise, both witnesses testified their respective companies had no policies or procedures in place to handle duplicative or "frivolous" disputes, despite receiving thousands of disputes they claim fell into that category over a period of years. Neither Plaintiff could point to a statute or other authority that would prevent Lexington Law Firm from sending letters in a consumer's name and on their behalf, much less without their knowledge or consent. RGS Financial testified that it performed no analysis to confirm the letters were sent without the knowledge or consent of the consumer, and could not identify any consumer client of Lexington Law.

No reasonable jury could conclude the Plaintiffs used "ordinary care and reasonable diligence to protect [their] interests" here. A reasonably diligent debt collector would have

followed up on requests it suspected to be coming from someone other than the consumer and determined the true source of the correspondence before responding – this way the debt collector could clarify its obligations under the law. There was no evidence of any attempt to investigate or mitigate on the part of either Plaintiff. Instead, Plaintiffs here suspected they were receiving letters not drafted by their debtors, and instead cataloged the correspondence and essentially laid in wait to file suit. It is unreasonable for the Plaintiffs to now claim they relied on such correspondence for a period of years when no investigation occurred to determine the source. A reasonable debt collector would have "undert[aken] an investigation and discovered the fraud" as the *Arroyo Shrimp Farm* court cautioned. No jury could have reasonably concluded otherwise, and therefore Defendants are entitled to Judgment as a Matter of Law.

### 2.2   Plaintiffs' Fraud By Non-Disclosure Claim Must Fail.

To prove a claim for common law fraud by non-disclosure, Plaintiffs must prove: a) Defendants concealed from or failed to disclose certain facts to Plaintiffs when having a duty to do so; b) the facts were material; c) defendants knew plaintiffs were ignorant of the facts and did not have an equal opportunity to discover the facts; d) Defendants were deliberately silent when they had a duty to speak; e) Defendants intended to induce Plaintiffs to take some action, f) Plaintiffs relied on the non-disclosure; and g) Plaintiffs were injured as a result of acting without the knowledge of the undisclosed facts. *Bazan v. Munoz*, 444 S.W.3d 110, 119 (Tex. App. – San Antonio 2014, no pet.). Here, elements a) and d) of Plaintiffs' claim fail because Defendants had no duty to disclose.[8]

To prove an action for fraud by non-disclosure, there must be a duty to disclose because a) there was a fiduciary or other special relationship requiring disclosure; b) the defendant discovered new information that made an earlier representation misleading or untrue; c) the

---

[8] The arguments in Section 2.1 also apply to elements f) and g) of Plaintiffs' fraud by non-disclosure claim.

defendant created a false impression by making a partial disclosure; or d) the defendant voluntarily disclosed some information and therefore it had a duty to disclose the whole truth. *Guevara v. Lackner*, 447 S.W.3d  566, 578 (Tex. App. – Corpus Christi 2014, no pet.). The existence of a duty to disclose is a question of law that must be decided by the court - not by the jury. *In re: International Profit Assocs.*, 274 S.W.3d 672, 678 (Tex. 2009).

Here, there was no duty to disclose. The testimony made clear there was no fiduciary or other special relationship between the parties, as the Plaintiffs and Defendants share no business relationship, no contractual relationship, and no other formal relationship which would give rise to a duty. Likewise, the Plaintiffs did not discover new information which made an earlier representation misleading. Plaintiffs may argue a false impression was created due to a partial disclosure, but no partial disclosure was made. Defendants made a full disclosure of the facts because, as stated above, Lexington Law Firm's clients requested the firm act on their behalf after giving the firm full consent to draft, sign, and send correspondence on their behalf and in their name without identifying the correspondence as coming from Lexington Law Firm. The clients affirmatively identified the trade lines they wished to dispute and requested the firm act on their behalf in disputing them. Therefore, to the extent a representation was made at all, the representation was accurate, full and complete and no duty to disclose additional information is triggered. Again, neither Plaintiff could point to a statute or other authority that would prevent Lexington Law Firm from sending letters in a consumer's name and on their behalf, much less without their knowledge or consent.  No evidence has been put forth that the designation of agency is in some way insufficient.

Furthermore, as stated in the preceding section, even if Plaintiff has made a claim against Lexington Law Firm, no claim has been proved against Progrexion. Progrexion is even further removed from such an allegation as the testimony developed revealed it drafts no letters, sends

no letters, and makes no decisions about what letters should be sent to whom. The last time Progrexion provided template letters to Lexington Law Firm to use was 2016, and even then Progrexion merely provided templates for use by Lexington Law Firm to use subject to Lexington's ultimate discretion, if at all. They were not responsible for any statement to the Plaintiffs – partial or complete. Therefore Progrexion has no duty to Plaintiff and Plaintiffs' claim for fraud by non-disclosure must fail as to Progrexion.

<div style="margin-left:2em;">

2.3    <u>Plaintiffs' Claims are Barred by the Statute of Limitations, the Jury's Finding that The Fraud Should Have Been Discovered on August 3, 2018 or October 1, 2018 Was Clearly Incorrect.</u>

</div>

The limitations period for a fraud action is four years. Tex. Civ. Prac. & Rem. Code § 16.004(a)(4). The discovery rule provides a cause of action's accrual begins when the plaintiff knows, or by exercising reasonable diligence should know of the facts giving rise to the claim. *Schlumberger Tech v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018). Once the plaintiff knows of the facts giving rise to the claim, the limitations period begins to run even if the plaintiff does not know the identity of the wrongdoer or the extent of the injury. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 207 (Tex. 2011).

The jury's finding that the alleged fraud should have been discovered by CBE on August 2, 2018 and by RGS on October 1, 2018 is clearly incorrect. First, and perhaps most importantly, CBE and RGS filed suit against Lexington Law Firm on August 15, 2017 – well before the jury found these entities should have been on notice of the alleged fraud. Clearly, by August 15, 2017, both parties were aware of their own allegations. Therefore on this fact alone, the jury's verdict is clearly incorrect. Secondly, there was no evidence presented to the jury, nor were there arguments of counsel, suggesting that August 2, 2018 or October 1, 2018 were the dates when the alleged fraud could have been discovered. The dates do not appear to be supported by any evidence upon which a reasonable juror could have relied.

Instead, the evidence showed that the alleged fraud should have been discovered in 2010 or 2012. As stated above, Sarah Buck, corporate representative for The CBE Group, first suspected the company was receiving "form" correspondence not actually drafted by the consumer in 2010. Erin Harness, representative for RGS Financial, similarly stated she had the same realization in 2012. While the witnesses may not have known "the identity of the wrongdoer or the extent of the injury" at that time, a reasonably diligent inquiry would have revealed the source of the correspondence. All it would have taken is a telephone call to the consumer to ask the origin of the correspondence – in fact, the debt collectors testified it was standard practice to place several telephone calls to the consumers during the ordinary course of business. RGS Financial even employed the use of a vendor to identify litigious consumers and then determine whether those consumers had legal counsel. Neither witness analyzed or investigated whether the letters came from Lexington Law or Progrexion. Neither witness attempted to determine whether consumer clients of Lexington Law agreed to have correspondence sent out in their names and on their behalf. Neither company established a policy or procedure to handle suspicious or unusual correspondence from the consumer. Accordingly, neither Plaintiff exercised reasonable diligence.

With ordinary reasonable diligence, CBE Group would have discovered the alleged "misrepresentations" in 2010, meaning their statute of limitations lapsed in 2014. Likewise, RGS would have discovered the alleged "misrepresentations" in 2012, meaning their statute of limitations lapsed in 2016. Yet, Plaintiff's state court complaints were filed on August 15, 2017 – well after either Plaintiff's statute of limitations had passed. Accordingly, this matter should be dismissed in its entirety because, using the discovery rule, the Plaintiffs' statute of limitations had passed well before their Complaint was filed.

2.4     Plaintiffs Should Not Have Presented their Damages to the Jury Because They
        Failed to Substantiate and Mitigate Them.

Even if Plaintiffs' claim clears the statute of limitations hurdle, for the same reasons outlined in Section 2.3 above, Plaintiffs should not be permitted to present the jury with their claimed damages. While Plaintiffs claim they expended time and energy responding to the correspondence, the damages are speculative in that CBE Group has presented no evidence to show the 35,000, 45,000 and now 121,000 letters claimed to have been received and for which responses were prepared, were actually sent by Lexington Law and involved Lexington Law clients or were sent without the knowledge and consent of the client, assuming they can establish such a letter involved a Lexington Law client.  RGS Financial speculates that the letters came from Defendant Lexington Law Firm with no analysis performed that they were actually sent by Lexington Law, they involved a Lexington Law client and much less were sent without the knowledge or consent of the Lexington Law client.  RGS Financial simply argues they looked similar.  Most detrimental to the damage analysis is the actual responses they claim to have prepared and provided to the particular consumer.  Such evidence is not before the Court.

In further support of the damage element not being met, with ordinary diligence, Plaintiffs would have discovered the alleged "misrepresentations" in 2010 and 2012. Yet, rather than contacting their debtors to inquire about the letters, or simply implementing a policy to respond only to meritorious and non-duplicative letters, they started cataloging the letters and contemplating a lawsuit. RGS Financial lacked any policy to respond to frivolous or duplicative disputes and responded to all on their own volition.  CBE Group chose to investigate each letter as well despite the legal excuse afforded it under the FCRA.  Had Plaintiffs undertaken even modest effort to determine the source of the letters, or availed themselves of the statutory schemes afforded debt collectors permitting them to withhold responses to duplicative inquiries, they would not have been required to respond to each and every letter and their alleged damages

would have been mitigated. Further, of the letters that were actually admitted into evidence, no evidence was presented to establish that either Plaintiffs' receipt of the letters (or those that were similar in nature as alleged) even required a response under any statutory scheme set forth by the FCRA and/or FDCPA or any state law governing debt collectors. Notwithstanding the lack of any requirement to respond, Plaintiffs failed to actually read the letters or avail themselves of the procedures set forth under the FDCPA or FCRA (and assuming a response was needed) and therefore their damages should not be presented to the jury in full.

2.5     Plaintiffs Should Not Have Argued Punitive Damages To The Jury, and the Jury's Punitive Damages Award was Excessive Under the Applicable Law.

Plaintiffs' request for punitive damages was not supported by sufficient evidence upon which a reasonable jury could have based their conclusion. Additionally, the amount awarded by the jury exceeds Texas law, and therefore Defendants are entitled to Judgment as a Matter of Law.

2.5.1    *Plaintiffs Failed to Submit Sufficient Factual Evidence to Support Their Request for Punitive Damages.*

Plaintiffs' Fourth Amended Complaint alleged Plaintiffs are entitled to "an award of actual and exemplary damages."[9] Plaintiffs are not entitled to exemplary damages and should not have been permitted to submit same for the jury's consideration. In an action for common-law fraud, the plaintiff can recover exemplary damages, but only if they have met their burden of proof by clear and convincing evidence. *See.* Tex. Civ. Prac. & Rem. Code § 41.003(a); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 302 (Tex. 2006). Clear and convincing means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* If a court determines that no reasonable jury could form a firm belief or conviction that the matter that must be proven is

---

[9] *See* Doc. 69 at p. 21.

true, then that court must conclude that the evidence is legally insufficient. *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004).

Here, even if the jury determined fraud was committed by a preponderance of the evidence, there was not sufficient evidence for a reasonable jury to form a "firm belief or conviction" as to the truth of the allegations sought to be established such as to satisfy the clear and convincing evidence standard. As stated above, the evidence has shown the Defendants acted at the request of their clients, with adequate consent to do so, and after being instructed to so act. Plaintiffs have also failed to show reliance by clear and convincing evidence. A reasonably diligent debt collector would have followed up on requests it suspected to be coming from someone other than the consumer and determined the true source of the correspondence before responding – this way the debt collector could clarify its obligations under the law. Instead, Plaintiffs here suspected they were receiving letters not drafted by their debtors, and instead cataloged the correspondence and essentially laid in wait to file suit. Plaintiffs have failed to establish by clear and convincing evidence that all letters complained of originated with the Defendants. Instead, they have only given the jury circumstantial evidence about the content of the letters which may lead them to assume the letters are related, but cannot establish a "firm belief" of that fact in the mind of a reasonable juror. Speculation cannot be the basis of "clear and convincing" evidence.  For these and the other reasons outlined in the preceding sections, the jury lacks sufficient evidence on which exemplary damages can be based. Accordingly, the question of exemplary damages should not have been submitted to the jury.

### 2.5.2   *The Jury's Grant of Punitive Damages Exceeds The Damages Permitted by Tex. Civ. Prac. & Rem. Code Ann. § 41.008*

The jury's award of exemplary damages as to both Lexington Law Firm and Progrexion was excessive and exceeded the statutory cap set forth in subsection 41.008(b) of the Texas Civil

Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b). This subsection provides:

> (b)    Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of:
>
>    (1)    (A)    two times the amount of economic damages; plus
>
>           (B)    an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or
>
>    (2)    $200,000.

The jury held Lexington Law Firm responsible for $333,477.00 in CBE's economic damages. Hence, under section 41.008, the maximum punitive damages CBE would be entitled to recover is twice that amount, or $666,954.00. The jury awarded $851,887.00 in punitive damages, which is $184,933.00 above the maximum permissible award under Texas law. Therefore the punitive damages award, if any, as to Lexington should be reduced by a minimum of $184,933.00.

The jury also held Progrexion responsible for $179,565.00 in CBE's economic damages. Under section 41.008, the maximum amount of punitive damages CBE would be entitled to recover is twice that amount, or $359,130.00. The jury awarded $1,010,055.00 in punitive damages, which is $650,925.00 above the maximum permissible award. Therefore the punitive damages award, if any, as to Progrexion should be reduced by a minimum of $650,925.00.

The damages awarded to RGS are likewise excessive. The jury held Progrexion responsible for $13,524.00 in economic damages to RGS, but awarded $46,856.00 in punitive damages, which is $19,808.00 more than the cap described above. Therefore the punitive damages award, if any, as to Progrexion should be reduced by a minimum of $19,808.00.

Plaintiff may argue some of Defendants' conduct brought the damages outside the purview of the statute. However, even "a showing of fraud or malice by clear and convincing

evidence does not as a matter of law establish one of the statutory exceptions in section 41.008(c)." *Signal Peak Enterprises of Texas, Inc. v. Bettina Investments, Inc.*, 138 S.W.3d 915, 927 (Tex. App.—Dallas 2004, pet. struck). Hence, even if the Court affirms the jury finding that Plaintiffs cleared the hurdle of proving fraud by clear and convincing evidence, the same is not sufficient to uphold an award of punitive damages in excess of Tex. Civ. Prac. & Rem. Code Ann. § 41.008. The Court should grant Judgment as a Matter of Law as to the award of punitive damages because the amount awarded clearly violates the applicable law.

3.     <u>**Conclusion**</u>

For the reasons outlined above, Defendants are entitled to Judgment as a Matter of Law. Plaintiffs have failed to prove their claim against each Defendant for Fraud, Fraud by Non-Disclosure, and Plaintiff's damages were unsupported and violate Texas law. Therefore the Court should direct a verdict in favor of the Defendants.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

By: */s/ Brent W. Martinelli*
     **FRANK ALVAREZ**
     State Bar No. 00796122
     **BRENT W. MARTINELLI**
     State Bar No. 24037037
     **JOSHUA ROVELLI**
     State Bar No. 24110301

1700 Pacific, Suite 4545
Dallas, Texas 75201
Telephone:  (214)754-8755
Facsimile:  (214)754-8744
Email: brent.martinelli@qpwblaw.com
Email: frank.alvarez@qpwblaw.com
Email: josh.rovelli@qpwblaw.com

*Attorneys for John C. Heath, Attorney at Law,*
*PLLC d/b/a Lexington Law Firm and Progrexion,*
*ASG, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that he forwarded a copy of the foregoing pleading to all parties entitled to notice of same and, specifically, to counsel for Plaintiffs via **CM/ECF** on this 24th day of July, 2019:

ROBBIE MALONE
Email: rmalone@mamlaw.com
EUGENE XERXES MARTIN, IV
Email: xmartin@mamlaw.com
JIN S. SHIN
State Bar No. 24096295
Email: jshin@mamlaw.com
NorthPark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas   75231

*/s/ Brent W. Martinelli*
Brent W. Martinelli