IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE CBE GROUP, INC. and RGS FINANCIAL, INC., | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Civil Action No. 3:17-CV-2594-L |
| JOHN C. HEATH, ATTORNEY AT LAW, PLLC d/b/a LEXINGTON LAW FIRM and PROGREXION ASG, INC., | § § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are Defendants' Amended Motion for Judgment as a Matter of Law (Doc. 82), filed July 1, 2019; Plaintiffs' Motion for Entry of Final Judgment (Doc. 91), filed July 19, 2019; and Defendants' Renewed Motion for Judgment as a Matter of Law (Doc. 92), filed July 24, 2019. Having considered the motions, responses, replies, record, evidence adduced at trial, jury verdict rendered on July 3, 2019, and applicable law, the court **denies as moot** Defendants' Amended Motion for Judgment as a Matter of Law (Doc. 82); **denies** Plaintiffs' Motion for Entry of Final Judgment (Doc. 91); and **grants** Defendants' Renewed Motion for Judgment as a Matter of Law (Doc. 92).

**I.     Background**

On July 14, 2017, The CBE Group, Inc. ("CBE Group" or "CBE")—a nationwide debt collection agency—on behalf of itself and others similarly situated, initially filed this putative class action lawsuit in the 44th Judicial District Court of Dallas County, Texas, alleging that Defendant John C. Heath, Attorney at Law, PLLC d/b/a Lexington Law Firm ("Lexington Law Firm" or

"Lexington Law"), defrauded and disrupted its business by exploiting federal consumer protection statutes and running a fraudulent credit repair scheme in violation of Texas law. Def.'s Not. of Removal, Ex. B13 (Pl.'s Orig. Class Action Pet.) (Doc. 1-1). Lexington Law Firm timely removed the action to federal court, contending that complete diversity of citizenship existed between the parties and that the amount in controversy, exclusive of interest and costs, exceeded $75,000. Def.'s Notice of Removal 1 (Doc. 1).

Following removal, with leave of court, CBE Group amended its pleadings to add RGS Financial, Inc. ("RGS Financial") as a Plaintiff and Progrexion ASG, Inc. ("Progrexion") as a Defendant. *See* Third Am. Compl. (Doc. 22). After an initial pretrial conference held on May 30, 2019, the court directed the parties to file an amended complaint and amended answer. On June 5, 2019, Plaintiffs CBE Group and RGS Financial (sometimes collectively, "Plaintiffs") filed Plaintiffs' Fourth Amended Original Complaint (Doc. 69), eliminating the class action allegations previously pleaded, and alleging the following claims against Lexington Law Firm and Progrexion (sometimes collectively, "Defendants"): fraud; fraud by nondisclosure; tortious interference with Plaintiffs' existing contracts with creditors; tortious interference with prospective relations; and civil conspiracy. On June 10, 2019, Defendants filed their Answer to Plaintiffs' Fourth Amended Complaint (Doc. 70), denying Plaintiffs' allegations and asserting numerous affirmative defenses, including that Plaintiffs' claims are barred by the statute of limitations and that they failed to mitigate their damages.

In a nutshell, Plaintiffs contend that Defendants run a nationwide fraudulent credit repair scheme, preying on financially troubled consumers by drafting, signing, and mailing frivolous dispute correspondences—all using Progrexion's patented software that generates context-based unique letters—in the name of consumers, without the consumer's specific knowledge or consent,

**Memorandum Opinion and Order – Page 2**

and without identifying that the letters are from a law firm, rather than a consumer. According to Plaintiffs, Defendants devised their scheme to circumvent the parameters of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA").[1]

Plaintiffs contend the fraudulent credit repair scheme resulted in damages, including loss of revenue (such as lost debt collection commissions), as they have had to divert their resources to review and respond to the dispute letters, an obligation they would not have been required to undertake had they known that the letters were drafted, signed, and mailed by Defendants, rather than consumers.

Defendants assert that Lexington Law Firm specializes in assisting consumer clients to ensure they have a fair and accurate credit report and engages the use of an outside vendor, Defendant Progrexion, to assist in marketing the firm's service and provide assistance in signing up, retaining, and servicing consumer clients. Defendants contend that, contrary to Plaintiffs' position, the consumer clients have knowledge of, and give consent to, Defendants sending the letters to data furnishers on their behalf to help repair their lines of credit.

No dispositive motions were filed. In the Amended Joint Pretrial Order (Doc. 77), signed by the court on June 25, 2019, the parties stipulated to the following facts:

- CBE Group is a data furnisher subject to the rules imposed by the FCRA, FDCPA, and relevant state laws.

- RGS Financial is a data furnisher subject to the rules imposed by the FCRA, FDCPA, and relevant state laws.

- John C. Heath, PLLC does business as Lexington Law Firm.

---

[1] These laws apply to "data furnishers," entities such as Plaintiffs that furnish or transmit information relating to debts owed by consumers to consumer reporting agencies for inclusion in a consumer report. Plaintiffs assert that, under the FDCPA and FCRA, data furnishers must comply with certain investigative requirements when they receive a dispute directly from a consumer, rather than a credit repair company.

**Memorandum Opinion and Order – Page 3**

- Lexington Law Firm is a law firm that advertises itself as "the leading credit repair law firm."

- Progrexion is a credit repair organization that advertises itself as "a technology-enabled consumer services business that leads the way in Credit Repair."

- Lexington Law Firm and Progrexion have entered into various service agreements including accounting, human resource management, payment processing, and intellectual technologies management services.

- Under their agreements, Lexington Law Firm receives services from Progrexion that aid Lexington Law in their credit repair services.

- Under their agreements, Progrexion receives a flat fee from Lexington Law Firm as well as fees per consumer client serviced by Lexington Law Firm.

- Progrexion leases the trademark Lexington Law to John C. Heath Attorney at Law, PLLC d/b/a Lexington Law Firm.

- Progrexion is the owner of patented software that generates context-based unique letters, called "Letter Generation Software."

- Progrexion provides the Letter Generation Software to Lexington Law Firm for a fee. The Letter Generation Software generates "context-based unique letters."

- Progrexion provides training to Lexington Law Firm paralegals.

- Progrexion markets on behalf of Lexington Law Firm.

- Progrexion generates sales leads on behalf of Lexington Law Firm.

- Progrexion completes client enrollment on behalf of Lexington Law Firm.

- Through Progrexion, Lexington Law Firm enters into an engagement agreement with its consumer client electronically.

- Progrexion sends Lexington Law Firm's engagement agreement to prospective consumer clients via e-mail or text.

- Lexington Law Firm has different service levels for which its consumer clients may sign up. The service level chosen by the consumer client affects the number of dispute letters generated by Defendants through the Letter Generation Software.

- Lexington Law Firm's service levels are opt-out plans that automatically renew every month unless its consumer client cancels the service plan.

- Lexington Law Firm's consumer client accesses a user interfaced called "Case Valet." In Case Valet, the consumer client chooses how he or she wishes Lexington Law Firm to challenge the negative items on his or her credit report. Based on the consumer client's challenge preference, selections, and the chosen service plan, Defendants use the Letter Generation Software to draft and sign dispute letters in the consumer client's name and using his or her signature. Defendants print and mail the generated dispute letters to the consumer client's resident state, and from there, to the intended recipient of the dispute letters such as Plaintiffs.

- Defendants postmark and mail the generated dispute letter to credit bureaus, creditors, and collection agencies such as Plaintiffs in the consumer client's name and from the consumer client's residence state.

- Consumer clients are not aware that the letters are being generated using the Letter Generation Software. Consumer clients are likewise not aware that their selections in Case Valet and other selections that they make on Lexington Law Firm's website are inputted into the Letter Generation Software and affect the dispute letters generated.

- Consumer clients are not aware that letters are mailed from their state of residence.

- Consumer clients are not offered the opportunity to review the letters generated through the Letter Generation Software.

- Defendants mail monthly dispute letters to a particular entity pursuant to the consumer's service plan until the consumer either updates his or her challenge preference or cancels his or her services with Lexington Law Firm.

- Defendants do not disclose to the recipient of the dispute letters that the letters are associated with Defendants. Defendants do not disclose that the letters are drafted and signed by Defendants using the Letter Generation Software. Defendants do not disclose to the recipient of the dispute letters that the letters are printed and mailed by Defendants.

- Defendants do not disclose to the recipient of the dispute letters that the consumer client did not draft or sign the letters or review the letters.

- Defendants intended that the recipient of the dispute letters treat them as if the consumer personally drafted, signed, and mailed them.

- Defendants do not have a process in place whereby they reach out to their consumer clients for information concerning any responses to the dispute letters the consumer client may have received from recipients of the dispute letters.

- Defendants assume that if the consumer client does not update Defendants regarding responses to dispute letters, the consumer client has been ignored, and Defendants continue drafting, signing, and mailing dispute letters.

- Plaintiffs have received thousands of pieces of dispute letters purportedly drafted and signed by Lexington Law Firm's consumer clients, even after they had responded to some of the dispute letters previously.

- Plaintiffs are obligated under the FDCPA and FCRA, and other state laws, to investigate and respond to dispute letters when they are directly from a consumer.

- Plaintiffs determine whether a dispute letter is frivolous on a case-by-case basis.

Am. Jt. Pretrial Order 4-8 (Doc. 73).

The claims were tried before a jury over a period of six days from June 25, 2019, to July 3, 2019. On June 27, 2019, Plaintiffs withdrew their claims for tortious interference with Plaintiffs' existing contracts with creditors and tortious interference with prospective relations. On July 1, 2019, at the close of the evidence, Defendants filed an Amended Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a), arguing that there was a "complete absence of pleading or proof" on several vital elements of Plaintiffs' remaining claims for fraud, fraud by nondisclosure, and conspiracy, and that their affirmative defenses of statute of limitations and mitigation precluded Plaintiffs' ability to recover in this case. Defs.' Am. Mot. J.M.O.L. 2 (Doc. 82). On July 1, 2019, following oral argument, the court reserved ruling on the motion and stated that it would consider the arguments raised in the motion postverdict, as necessary.

On July 3, 2019, the jury rendered a verdict in favor of Plaintiffs on the fraud and fraud by nondisclosure claims. The jury found, however, that Plaintiffs had failed to prove their conspiracy claim by a preponderance of the evidence. With respect to the fraud claims, the jury answered "yes" to the relevant questions, as follows:

**Question No. 1**: Did CBE prove by a preponderance of the evidence that Lexington Law committed fraud against it?

Answer "Yes" or "No."

Answer: Yes.

**Question No. 2**: Did RGS prove by a preponderance of the evidence that Lexington Law committed fraud against it?

Answer "Yes" or "No."

Answer: Yes.

**Question No. 3**: Did CBE prove by a preponderance of the evidence that Progrexion committed fraud against it?

Answer "Yes" or "No."

Answer: Yes.

**Question No. 4**: Did RGS prove by a preponderance of the evidence that Progrexion committed fraud against it?

Answer "Yes" or "No."

Answer: Yes.

Court's Charge to the Jury 14-15 (Doc. 87).

With respect to the fraud by nondisclosure claims, the jury answered "yes" to the relevant questions, as follows:

**Question No. 1**: Did CBE prove by a preponderance of the evidence that Lexington Law committed fraud by nondisclosure against it?

Answer "Yes" or "No."

Answer: Yes.

**Question No. 2**: Did RGS prove by a preponderance of the evidence that Lexington Law committed fraud by nondisclosure against it?

Answer "Yes" or "No."

Answer: Yes.

**Question No. 3**: Did CBE prove by a preponderance of the evidence that Progrexion committed fraud by nondisclosure against it?

Answer "Yes" or "No."

Answer: Yes.

**Question No. 4**: Did RGS prove by a preponderance of the evidence that Progrexion committed fraud by nondisclosure against it?

Answer "Yes" or "No."

Answer: Yes.

Court's Charge to the Jury 16-17 (Doc. 87).

With respect to actual damages for lost time and expenses sustained in the past related to reviewing and responding to the letters in question, the jury found that Lexington Law Firm was liable to CBE for $333,477 in economic damages; that Progrexion was liable to CBE for $179,565 in economic damages; that Lexington Law Firm was liable to RGS Financial for $25,116 in economic damages; and that Progrexion was liable to RGS Financial for $13,524 in economic damages. Court's Charge to the Jury 23 (Doc. 87).

With respect to exemplary damages, the jury assessed exemplary damages in the amount of $851,887 against Lexington Law Firm and in favor of CBE; in the amount of $1,010,055 against Progrexion and in favor of CBE; in the amount of $39,519 against Lexington Law Firm and in favor of RGS Financial; and in the amount of $46,856 against Progrexion and in favor of RGS Financial. Court's Charge to the Jury 25-29 (Doc. 87).

On July 19, 2019, Plaintiffs filed their Motion for Entry of Final Judgment, asking the court to enter final judgment in a separate document in accordance with Federal Rule of Civil Procedure

58, including actual and exemplary damages awarded by the jury, as well as postjudgment interest. Pls.' Mot. for Entry of Final J. (Doc. 91). The motion has been fully briefed.

On July 24, 2019, pursuant to Federal Rule of Civil Procedure 50(b), Defendants filed their Renewed Motion for Judgment as a Matter of Law (Doc. 92), raising the same arguments as in their July 1, 2019 Amended Motion for Judgment as a Matter of Law (*see* Doc. 82). As previously noted, following oral argument, on July 1, 2019, the court reserved ruling on Plaintiffs' Amended Motion for Judgment as a Matter of Law, explaining it would consider the arguments contained therein postverdict, as necessary. In Defendants' Renewed Motion for Judgment as a Matter of Law, Defendants contend that Plaintiffs have not supported their fraud claim with a demonstration of any material misrepresentation and cannot legally prove that any fraud occurred because they failed to demonstrate a material false statement which Defendants knew to be false. Defendants further argue that, to the extent Plaintiff proved anything at trial, they only demonstrated that Defendants acted with the express written consent of their clients, and at the request of their clients. Even if the court finds that Plaintiffs have demonstrated a material misrepresentation, Defendants further argue, citing to the testimony of two of Plaintiffs' witnesses, that Plaintiffs have failed to show reasonable reliance on their part. Defendants also argue that Plaintiffs' fraud by nondisclosure claim must fail because Plaintiffs did not show that Defendants have any duty to disclose facts to them, which is a vital element of the claim.[2]

---

[2] Additionally, Defendants argue that their affirmative defenses of statute of limitations and mitigation preclude Plaintiffs' ability to recover in this case. Finally, Defendants contend that Plaintiffs failed to establish entitlement to exemplary damages by clear and convincing evidence and, even were the court to find that Plaintiffs cleared the hurdle of proving fraud by clear and convincing evidence, the amount of exemplary damages awarded is excessive and exceeds the statutory maximum set forth in subsection 41.008(b) of the Texas Civil Practice and Remedies Code.

**Memorandum Opinion and Order – Page 9**

In opposition, Plaintiffs argue that all elements of their fraud and fraud by nondisclosure claims were met, that the jury did not err in finding in their favor on these claims, and that the jury's exemplary damages award should not be disturbed. Specifically, Plaintiffs contend:

> Evidence was presented of misrepresentations and the jury's verdict reflects such finding. Evidence was presented of Plaintiffs' reliance upon such misrepresentations that went uncontroverted. Plaintiffs' [sic] presented ample and specific testimony as to how they were damaged with calculations of damages per letter, and exact counts of how many letters were received from Defendants and responded to. Defendants failed to present or elicit any evidence to the contrary in order to disprove, mitigate or unsubstantiated [sic] such damages and further failed to establish any sort of limitations [d]efense. Last, exemplary damages were properly presented to and awarded by the jury. The clear and convincing burden was met by Plaintiffs, the damages were substantiated, and the awards do not exceed the per defendant cap imposed by Tex. Civ. Prac. & Rem Code § 41.008(b). Judgment should be entered pursuant to the jury's correct findings.

Pls.' Resp. to Defs.' Renewed Mot. for J.M.O.L. 28-29 (Doc. 94) (citation omitted).

## II.     Legal Standard - Motion for Judgment as a Matter of Law

Rule 50(a) of the Federal Rules of Civil Procedure allows a party to move for judgment as a matter of law at trial before the jury renders its verdict. "If a party has been fully heard on an issue during a jury trial" and the court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," it "may grant a motion for judgment as a matter of law against the party . . . ." Fed. R. Civ. P. 50(a)(1). Under Rule 50(a), the movant must "specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). "If the pre-verdict motion is denied, then the party can renew its motion under Rule 50(b)." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 290 (5th Cir. 2019). In addition to denying or granting a Rule 50(a) motion, "the court may defer ruling," as it did in this instance. *Montano v. Orange Cty., Texas*, 842 F.3d 865, 873 (5th Cir. 2016) (citation omitted). "Even at the close of all evidence it may be desirable to refrain from granting a motion for judgment as a matter of law despite the fact that it would be possible for the district court to do so." *Id.* (quoting

**Memorandum Opinion and Order – Page 10**

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405-06 (2006) (in turn quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2533, 319 (2d ed. 1995)). Further, a "Rule 50(b) motion is technically only a renewal of the Rule 50(a) motion, and[,] therefore, the movant cannot assert a ground that was not included in the original motion." *Universal Truckload, Inc. v. Dalton Logistics, Inc.*, 946 F.3d 689, 694 (5th Cir. 2020) (citation and internal quotation marks omitted and alteration added).[3]

A motion for judgment as a matter of law "challenges the legal sufficiency of the evidence to support the verdict." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006). The court will "'uphold a jury verdict unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable [jurors] could not arrive at any verdict to the contrary.'" *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039 (5th Cir. 2011) (alteration in original) (quoting *Cousin v. Trans Union Corp.*, 246 F.3d 359, 366 (5th Cir. 2001)). "In other words, the 'jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did.'" *Id.* at 1039-40 (quoting *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008)).

---

[3] In Defendants' Renewed Motion for Judgment as a Matter of Law, filed pursuant to Rule 50(b), Defendants argue that they are entitled to judgment as a matter of law on Plaintiffs' fraud claim because, among other things, Plaintiffs failed to demonstrate justifiable reliance on any purported misrepresentation in the dispute letters. *See* Defs.' Renewed Mot. for J.M.O.L. 12-13 (Doc. 92) ("No reasonable jury could conclude that Plaintiffs used ordinary care and reasonable diligence to protect their interest[s] here. A reasonably diligent debt collector would have followed up on requests it suspected to be coming from someone other than the consumer and determined the true source of the correspondence before responding—this way the debt collector could clarify its obligations under the law.") (internal quotation marks omitted). In response, Plaintiffs contend that Defendants' argument is untimely and should not be considered by the court. Pl.'s Resp. to Defs.' Renewed Mot. for J.M.O.L 14 (Doc. 94). As Defendants correctly note in their reply brief, and as a review of the record so demonstrates, Defendants raised this argument at the close of evidence in their Amended Motion for Judgment as a Matter of Law (Doc. 82), thereby preserving their right to raise it postverdict. Additionally, the court notes that Defendants preserved all the arguments made in their Renewed Motion for Judgment as a Matter of Law by initially raising them at the close of evidence pursuant to Rule 50(a).

**Memorandum Opinion and Order – Page 11**

**III.    Analysis**

  **A.  Fraud**

To prevail on their fraud claim, CBE Group and RGS Financial must prove that Lexington Law Firm and Progrexion: (1) "made a material representation that was false"; (2) "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth"; (3) "intended to induce [CBE Group and RGS Financial] to act upon the representation"; and (4) that CBE Group and RGS Financial "actually and justifiably relied upon the representation and suffered injury as a result." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (quoting *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)) (internal quotation marks omitted). "The fourth element has two requirements: the plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable." *Id.* (citing *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010)).

Defendants argue that Plaintiffs' fraud claim must fail because Plaintiffs "failed to show at trial that Lexington Law Firm or Progrexion made any material false statement which they knew to be false because in the case of each alleged 'misrepresentation[,]' Lexington had consent of the client to act in the prescribed manner." Defs.' Renewed Mot. for J.M.O.L. 7 (Doc. 92). Defendants further contend that, even assuming *arguendo* that Plaintiffs demonstrated that Defendants made a material misrepresentation, Plaintiffs "still failed to demonstrate reasonable reliance on the alleged misrepresentation." *Id.* at 11. Plaintiffs counter that they "easily met their burden of showing material false statements at trial, specifically on two subjects: 1) that the letters were from the consumer 'client' debtors rather than a law firm of credit repair organization; and 2) that the

**Memorandum Opinion and Order – Page 12**

consumer 'client' debtors disputed their debts." Pls.' Resp. to Defs.' Renewed Mot. for J.M.O.L. 8 (Doc. 94). In response to Defendants' argument that Plaintiffs failed to demonstrate justifiable reliance on any misrepresentation, Plaintiffs argue that two of their witnesses "provided uncontroverted testimony as to their respective company's reliance on the misrepresentations of Defendants." *Id.* at 13.

For the reasons that follow, the court agrees with Defendants that Plaintiffs failed to show at trial that Lexington Law Firm or Progrexion made any material false statement. As such, the evidence was legally insufficient to support the jury's fraud findings, and Defendants are entitled to judgment as a matter of law on Plaintiffs' fraud claim.

*1. Material Misrepresentation*

Reduced to its essence, the question is whether the evidence—viewed in the most favorable light to Plaintiffs—established that Lexington Law Firm or Progrexion made a material misrepresentation that was false when Lexington Law Firm, at the direction of its clients, signed its clients' names on the credit dispute letters mailed to Plaintiffs. For the reasons stated below, the court determines that there was insufficient evidence for the jury's finding on this element of Plaintiffs' fraud claim.

Plaintiffs' Exhibit 9, a retainer agreement executed by Lance Garza, a Lexington Law Firm client, provides as follows:

> You understand Communications sent by Lexington to Furnishers and Bureaus on your behalf will be sent in your name, and will not be identified as being sent by Lexington. Copies of written Communications will be provided to you upon request.

Pls.' Ex. 9 (Lex. 0127). Exhibit 9 also provides that Lexington is authorized to act "on your behalf and in your name":

> You agree that Lexington may act as your non-exclusive agent and attorney in fact, on your behalf, for the limited purpose of:
>
> (a) requesting and receiving your consumer credit disclosures and credit reports;
>
> (b) disputing, challenging, or investigating with Bureaus as applicable, at your direction and within our professional judgment, inaccurate, unfairly reported, incomplete, or unsubstantiated information on such disclosures and reports;
>
> (c) receiving results from such inquiries and communicating them to you;
>
> (d) investigating and/or verifying information provided by Furnishers to Bureaus; and
>
> (e) signing letters on your behalf and in your name.

Pls.' Ex. 9 (Lex. 0130).

In addition, Cody Johnson, a corporate representative for Lexington Law Firm, testified that consumer clients who retained Lexington Law Firm executed a retainer agreement with substantially identical terms to those set forth above in Plaintiffs' Exhibit 9. This testimony was not contradicted or disputed by Plaintiffs.[4] In Plaintiffs' Exhibit 13, an audio recording of Lance

---

[4] Plaintiffs point to the deposition testimony of Augustina Chavarria to demonstrate that Lexington Law Firm's clients, although they signed the retainer agreement and agreed to its terms and conditions, nevertheless did not understand that the dispute letters would be sent by Lexington Law on their behalf or comprehend how Lexington Law intended to repair their credit. *See* Pls.' Resp. to Defs.' Renewed Mot. for J.M.O.L. 12 (Doc. 94). Plaintiffs also cite the telephone recording played to the jury between Lance Garza, a former Lexington law client, and Lexington Law's intake specialist, to support their contention that the agents glossed over the services being provided. *Id.* at 10-11 (citing Pls.' Ex. 13). Under Texas law, however, absent evidence of fraud in the formation of a contract, which is not present here, "a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it contained different terms." *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005); *see also National Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425-26 (Tex. 2015) (rejecting the plaintiff's argument that he was tricked into signing a release he failed to read when he was "in a hurry" and did not have his reading glasses); *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 810-11 (Tex. 2012) (It is not the courts' role "to protect parties from their own agreements, but to enforce contracts that parties enter into freely and voluntarily."); *NS412, LLC v. Finch*, 2019 WL 4329947, at *3 (N.D. Tex. Sept. 11, 2019) (Scholer, J.) ("[O]ne is presumed to have read a contract that one signs: A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it . . . .") (citation omitted). Further, "when parties enter into an agreement based on a writing that is not ambiguous, the court will give effect to the parties' intention as expressed in the writing." *In re McKinney*, 167 S.W.3d at 835. Here, the evidence at trial is that Lexington Law Firm's clients agreed to the retainer agreements and, therefore, are bound by the terms therein. Further, Plaintiffs do not argue that the retainer agreements

**Memorandum Opinion and Order – Page 14**

Garza, Mr. Garza is heard to consent to Lexington Law Firm sending correspondence on his behalf and in his name three times. Pls.' Ex. 13.

The Texas Supreme Court has stated that "[a] signature may legally be made not only by the signer personally, but by and through someone duly authorized by the signer." *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (citation omitted) (holding that a judge may sign a document by directing another person who is under the judge's immediate authority to affix the judge's signature using a rubber stamp). Although not squarely on point with this case, as it involved a judge authorizing another person under his or her immediate control to affix her or her signature to a document, rather than a client authorizing his or her attorney to sign a document on his or her behalf, *In re Barber* is instructive. The court also finds persuasive a 2018 decision by the Maryland Court of Appeals, in which it analyzed whether an attorney representing a client, after obtaining authorization, may sign his name on documents relating to the representation without disclosing to the other party that he had signed for the client. *See Attorney Grievance Commission of Maryland v. Paul*, 187 A.3d 625, 459 Md. 526 (2018). In *Paul*, an attorney signed his client's name on a nondisclosure agreement after retaining the authorization of the client to sign his name on documents relating to the representation. *Id.* at 632. The attorney did not disclose to the other contracting party that he had signed for the client. *Id.* A disciplinary proceeding was initiated against the attorney at which counsel for the State Bar argued the attorney "made a knowing representation that a nondisclosure agreement being sent to the opposing parties' counsel was

---

were ambiguous. Thus, the court must give effect to the parties' intention as expressed in the agreement. Finally, to the extent Plaintiffs are attempting to assert claims on behalf of Lexington Law Firm's clients pertaining to the formation of the contract and enforcement of its terms, the court concludes that they lack standing to assert the clients' claims. *See generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-560 (1992).

signed by [the client] when he knew that his client had not signed the agreement." *Id.* at 635 (internal quotations omitted). In response, the attorney noted that opposing counsel "cannot cite any case from any jurisdiction that requires the disclosure that a person has signed someone's name with permission, or that a person has signed with a power of attorney, before or at the time of signing." *Id.* The court held that it could not "conclude that [the attorney] signing [the client's] name or his 'omission' to indicate that he was signing [the client's] name 'as attorney-in-fact or any other capacity on behalf of Burke' was a 'false or misleading assertion.'" *Id.* at 636. The court further concluded that:

> Before the signing of the non-disclosure agreement, [attorney] and [client] discussed the relevant agreement, and [client] gave [attorney] his permission to sign his name on the agreement because Burke was away on vacation. Since [attorney] had the legal right to sign [client's] name on the non-disclosure agreement, [attorney's] statement that the agreement "was signed by [client] and myself" cannot be construed as "false" or "misleading" even though [client] did not physically sign the agreement.

*Id.* at 636.

Here, the evidence is similar. The evidence presented at trial demonstrated that Lexington Law Firm was acting in accordance with the retainer agreement, and that each client explicitly consented to Defendants disputing certain of their credit lines and signing their names on the letters. In light of this evidence, the court fails to see any actionable misrepresentation on the part of Defendants. Plaintiffs have not explained convincingly—at the July 1, 2019 oral argument or in their postverdict briefing—how Defendants' conduct amounts to an actionable misrepresentation. Further, Plaintiffs have not provided the court with any caselaw even arguably on point. At the July 1, 2019 hearing on Defendants' amended motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a), counsel for Plaintiffs, Ms. Robbie Malone,

conceded to the court that there are no cases on point, and that this type of lawsuit has never been brought prior to this action.

In addition, Plaintiffs did not demonstrate at trial that Progrexion made any statements, much less a material misrepresentation. Plaintiffs' fraud claim is premised on the argument that the dispute letter contained a misrepresentation that it came from the consumer when it actually came from Lexington Law Firm. There is no evidence that Progrexion sent dispute letters; rather, the evidence is that Progrexion provided template letters to Lexington Law Firm for its use. Otherwise stated, there is no evidence that Progrexion was responsible for any statement to Plaintiffs.

In sum, the court agrees with Defendants because Lexington Law Firm had the legal right to sign its clients' names on the correspondence it sent on their behalf to data furnishers who reported inaccurate information about the clients' credit. *See* Pls.' Ex. 9. Thus, it cannot be said that the statements made to Plaintiffs were "false" or "misleading." Finally, in light of no cases on point and the legally insufficient evidence to establish all of the elements of fraud under Texas law, the court is extremely loath to expand Texas law and hold that Plaintiffs have proved a claim for fraud by a preponderance of the evidence under the extant circumstances of this case. While the conduct of Defendants may not be cause for approbation, it is Plaintiffs' failure to establish each of the elements of a claim for fraud on which the court bases its ruling. For these reasons, the court determines that there is no legally sufficient basis to support the jury's finding that Lexington Law Firm or Progrexion made any material representation that was false. As there is no legally sufficient evidentiary basis to find in Plaintiffs' favor, the court will grant Defendants' Renewed Motion for Judgment as a Matter of Law with respect to Plaintiffs' fraud claim.

### 2. *Justifiable Reliance*

As previously stated, Defendants also argue, citing to the testimony of two of Plaintiffs' witnesses, that Plaintiffs have failed to show justifiable reliance on their part. As the court has already concluded that Defendants are entitled to judgment as a matter of law on Plaintiffs' fraud claim, *supra*, the court need not reach the issue of justifiable reliance.

### B. Fraud by Nondisclosure

Fraud by nondisclosure is a subcategory of fraud and occurs "when a party has a duty to disclose certain information and fails to disclose it." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019) (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997)). To establish fraud by nondisclosure,

> the plaintiff must show: (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury.

*Id*. at 219-20 (citations omitted).

"In general, there is no duty to disclose without evidence of a confidential or fiduciary relationship." *Id*. at 220 (citing *Insurance of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998)). "A fiduciary duty arises as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships." *Id*. (citation and quotation marks omitted). "A confidential relationship is one in which the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Id*. (citations and quotation marks omitted). "An informal relationship giving rise to a duty may also be formed from a moral, social, domestic or purely personal relationship of trust and confidence." *Id*. (citations and quotation marks omitted). Further, "[t]here may also be a duty to disclose when

**Memorandum Opinion and Order – Page 18**

the defendant: (1) discovered new information that made its earlier representation untrue or misleading; (2) made a partial disclosure that created a false impression; or (3) voluntarily disclosed some information, creating a duty to disclose the whole truth." *Id*. (citations omitted).

The court concludes as a matter of law that Defendants had no duty to disclose. Trial testimony showed there was no fiduciary or other special relationship between the parties. Plaintiffs and Defendants did not share any business relationship, contractual relationship, or any other formal relationship that could possibly give rise to a duty to disclose.

The court also rejects Plaintiffs' argument that a false impression was made because of partial disclosure. According to Plaintiffs, Defendants communicated information concerning the debt (a partial disclosure), and the false impression that the communication was from the actual debtor, thereby triggering Defendants' duty to also disclose that the communications were from a law firm or credit repair organization. As previously discussed, and as exemplified by Plaintiffs' Exhibit 9 and the testimony of Cody Johnson, Lexington Law Firm's clients requested that it act on their behalf and gave full consent for Lexington law Firm to draft, sign, and send dispute letters in their names and on their behalf without any requirement that the dispute letters identify that the correspondence originated with Lexington Law Firm. As previously explained, this testimony was not contradicted or disputed by Plaintiffs. *See supra* at 14 and note 4. Otherwise stated, the evidence is that Defendants acted in the manner authorized by their clients in writing, and there is no partial statement made that could give rise to a duty to disclose.[5]

As with Plaintiffs' fraud claim, considering the lack of case law and insufficient evidence introduced at trial, the court is not inclined to expand Texas law and hold that Plaintiffs have

---

[5] In light of the court's decision, it need not address Defendants' remaining arguments that Plaintiffs' claims are barred by the statute of limitations, that Plaintiffs failed to mitigate their damages, and that the jury's award of exemplary damages is excessive under Texas law.

**Memorandum Opinion and Order – Page 19**

proved a claim of fraud by nondisclosure, especially given the lack of a confidential or fiduciary relationship between the parties that would give rise to a duty to disclose. For these reasons, the court determines that there is no legally sufficient basis to support the jury's finding that Lexington Law Firm or Progrexion had a duty to disclose or breached that duty. As there is no legally sufficient evidentiary basis to find in Plaintiffs' favor, the court will grant Defendants' Renewed Motion for Judgment as a Matter of Law with respect to Plaintiffs' fraud by nondisclosure claim.

## IV.     Conclusion

For the reasons stated above, the court **denies as moot** Defendants' Amended Motion for Judgment as a Matter of Law (Doc. 82); **denies** Plaintiffs' Motion for Entry of Final Judgment (Doc. 91); and **grants** Defendants' Renewed Motion for Judgment as a Matter of Law (Doc. 92) with respect to Plaintiffs' fraud and fraud by nondisclosure claims. Accordingly, the court **sets aside** and **vacates** the jury's verdict with respect to Plaintiffs' fraud and fraud by nondisclosure claims. A judgment that Plaintiffs take nothing on their claims against Defendants will issue by separate document as required by Federal Rule of Civil Procedure 58. All allowable and reasonable costs are assessed against Plaintiffs.

**It is so ordered** this 6th day of February, 2020.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge